Good morning, ladies and gentlemen. We seem to have all women on the bench and almost all men in the audience. We understand that all the counsel who are to present argument this morning are present, and so we will hear the cases in the order that they are listed. The first case, Phillips v. Barnhart and Sosa v. Unilap, are submitted on the briefs, so the first case for argument is Thakhar v. Prudential Insurance. If it please the Court, Mark Lipton, appearing for Plaintiff Koldup Thakhar. Good morning. Your Honors, I'd like to reserve two minutes for rebuttal, if I may. This case has been thoroughly briefed, so I just have a few quick points I'm going to make, and then if there's any questions of any of the Justices, I'd be glad to try and answer them as best I can. We have all the briefs. We have our administrative record. We have all these documents, but all that my client, Mr. Thakhar, ever received were these two documents. This is a 1990 plan, summary plan description, basically, group insurance certificate, and then a 1995 group insurance certificate, which says it replaces all prior group certificates. And both refer to the group insurance contract. Correct. Both refer to And ERISA requires that those be made available for inspection by the plan administrator. Well, first of all, Your Honor, no one has addressed at the lower court level or in the opposing briefs the California insurance code, which I do not believe is preempted. I think it's the insurance savings clause saves that. But ERISA has got to trump California standards of contract interpretation, and ERISA has a well-articulated scheme for what the summary plan description is supposed to do, and it explicitly says that all other documents are to be, you know, available for inspection. Yes, and they have to, if they were itemized clearly, if they're made available easily, this is a document between the employer and the company. It's not made readily available. It's referenced at one point. The summary plan description, Your Honor, is supposed to contain in it exceptions and exclusions. ERISA 2520.102-2 of the regulations clearly say that all exceptions and limitations have to be in the SPD, because even if the SPD references four other documents, one other document, eight, the participant gets the SPD. That's his lifeline. And I think the cases that I cited in my brief are pretty clear that the SPD controls, even if the plan document, Your Honor, is different than the SPD. I understand that, but the problem here is that you're, it is the amendment that matters. It's the ability to amend and the effect of amendment. That's the key thing, and that never changed, and it was always referred to by the summary plan description, in that it made the, it referred to the, the master, the contract. Well, I think the Court is basically saying that ERISA is preempting the California Insurance Code provisions. I sure am. Yeah, and which. Let me ask on that then. Is it your argument, although I wasn't quite sure, that the California laws supplement are not, that ERISA doesn't, they don't conflict with ERISA. They simply supplement ERISA. Is that your argument? I think they're totally consistent with ERISA. I agree. That's, my argument is that it does supplement, and it's consistent with Sol Torelli, which talks about reasonable expectation based on the summary plan description, with the regulations that I cited that talk about the exceptions and the limitations having to be in the summary plan description. But I have to deviate quickly because I want to say, Your Honor, that even going, even assuming that we look at both documents and at the amendment provision, whatever, the group insurance contract is this document. This is the group insurance certificate. This says, this talks about the group contract being amended, not the entire, any part of the entire group contract. There's like three or four documents that comprise it. Yeah, but the group contract includes explicitly the group insurance contract. No, it does not. The group contract, Your Honor, they use the terms entire group contract, group contract, and group insurance certificate. This is the group contract. Right. This is the group certificate. Right. And these are the entire group contract. And there's another document, too. It says if you amend the group contract, not if you amend any part of the entire group contract or any of the documents comprising it, if you amend this document this is a separate, distinct document. If you amend this document, then that amendment will not affect prior claims. It does not say if you amend any of the documents that comprise the entire group contract. I didn't pick the words. They use the words group contract, group certificate, entire group contract, amendment, endorsement, all those things. But there are at least these two documents. And they use the phrase entire group contract. Well, if that's the same as group contract, common contract interpretation is you don't use different words to describe the same thing. You have to assume that they're different things. I assume your argument would be precisely the same if the language in the insurance certificate had been flipped, that is, that the Section F exemption was in the first the second one but not the first one. Your argument would be the same. If they had put the limitation in afterwards. We talked about this in the district court about the question of health and welfare plans not being vested as opposed to pension plans. Well, you would be making precisely the opposite argument in that situation, right? I think I'd be in a weaker position to try and make the opposite argument if I was in that position because, as I said, health and welfare benefits under ERISA are not what might be the case. So I said that to Judge White below is that I may be in a worse position trying to argue that. This one, the insurance company wrote the second plan as well as the first plan, SPD. They could have put in there a limitation saying this does not apply to individuals who are already disabled. They didn't. They gave it to my client. They clearly acted on it as he could leave the country. He left the country for five months. They didn't apply the exemption. He then wanted to go again. And they're saying, well, one was a trip and one was a move. Well, that's not the way it's written in here. That shouldn't make a difference, especially when it's a five-month trip. You know, if that's okay, then why isn't the move okay? And my position is because the 1995 plan says that you can leave the country. The limitation was removed. I do think that ERISA is consistent with California law on the insurance code that will not permit you to use a plan. You can't use a plan. If a plan has more restrictive language than the SPD, even though they're both available, the SPD controls. So to say, well, that he could have gotten this doc, not this doc, but he could have gotten this document and therefore it should control, I think isn't consistent with the way ERISA is written and certainly not with the California insurance code. But like I said, even more important is this is called a group contract. This is a group certificate. This is the entire group contract. The language says that if the group contract is amended, it wasn't amended. The group certificate was amended. And to say, well, group contract, entire group contract, they all mean the same thing. I didn't write it. It's an insurance contract. It is ambiguous at best. And if it is ambiguous, the ambiguity should be construed in favor of my client. Sorry. Nothing further. I'd like to ask one question about how do you construe section 1144B, which says that except as provided in subsection B, this chapter shall supersede any and all state laws. And then in B it says, except as provided in subparagraph big B, nothing in this subchapter shall be construed to exempt or relieve any person from any law of any state which regulates insurance, banking, or securities. You know, ERISA's preemption clause has been very, very broad. And the Supreme Court in Travelers finally said, I think that the federal courts have too much work with ERISA. And then they limited in Travelers the preemption analysis. And not as much has been preempted since then. And actually some cases have been reversed as far as what was preempted, especially state stop-notice laws, mechanical laws, and things of that nature. What you look to for that provision to see that it's effective is what was stated in UNUM. And on page 11 of my brief, in my footnote, I go through those three, the four different points to see if it is. My next question, doesn't UNUM apply? Yeah, UNUM does apply. Miller has now undercut UNUM. Excuse me? Miller has now undercut UNUM. Hasn't it? I think they can be made consistent. I think that the provisions, UNUM is just a long line of cases that talk about the risk sharing, the concept that if it's an insurance provision for spreading the risk among a pool of people and it's integral to the relationship, the policy relationship between the insurer and the insured, and it's a practice limited to entities within the insurance industry, then it is an insurance regulation that is not preempted by ERISA. But as broad as the preemption clause is, the insurance savings clause is quite broad as well. And I think that that insurance savings clause in UNUM and the UNUM analysis applies in this case. The Justice may disagree with me, but. Okay. It's just about Easter time. We'll give you a minute on the phone. Thank you. Thank you very much. Thank you. We'll give you a minute. Sorry about that. I please the Court. I'm Ron Alberts, attorney for Prudential, the EPILEAG. Frankly, I agree with many of the points that the Appellant's Counsel has made in terms of the fact that we, I believe this is a very, the issues are very well briefed. I have not much to add, but that I believe that this is purely a case of contract construction. I believe that it is very clear, as Judge White found, that there was at all times the provision in the group insurance contract which dealt with the issue of amendments and how they are to be construed. And it's a neutral provision. Even if we accept all of the issues of contract construction, where all the limitations and exceptions must be clearly set forth in the summary plan description as required by ERISA, this is not one of those. This is not a provision of limitation. This is simply a provision which explains how do we deal with amendments to the plan. These can be amendments that go either way. I mean, certainly the plan could have, as you've indicated, Judge Reimer, the plan could have been amended the opposite direction. And this simply governs that relationship. I believe that it's very straightforward. Any questions you have? Well, let's assume that we accept your argument, and I won't speculate what might have happened if it was amended the other way. What do you do with the savings clause in ERISA? Doesn't that ñ it says specifically, anything which regulates insurance, banking, or securities. Why wouldn't we construe the California laws as supplementing ERISA in this case? Well, I don't think that there's really much of a problem if you want to do that, frankly, though I believe that ERISA certainly is very specific and has numerous provisions talking about what the agreements are supposed to look like and which ones, and the fact that there is a summary plan description, and it must contain this, this, this, and this, and there is a group insurance contract. So I think that it's clear that Congress intended to govern what the documents looked like. And you can construe that Congress gave the very minimum and that a state unum could add something that would not disagree with ERISA, but certainly could supplement it. Is there anything wrong with that argument? That these two particular insurance codes supplement it? It certainly depends how you ñ it depends how that's done. If we look at the way in which the insurance code provisions have been applied, and actually if we look at the fact that they don't seem to have ever been interpreted with regard to ERISA, at least as I can find in there. But in any event, if we look at how they've been applied, they've been applied to the notion of one of the same concepts that's in ERISA, which is that the summary plan description, if it differs from the group insurance policy, will usually trump it if it is more favorable to the beneficiary. Indeed. And I don't think that's inconsistent, frankly. I think that's what ERISA would require, and I think that's what state law would require. So I don't see it as really a major conflict. Again, I don't think that's what's going on here. Distinguish this case, then, from the one you just described. Well, in our case, we don't really have that ñ we don't have a more restrictive provision. We don't have the situation where the restriction on coverage, the out-of-area restriction, is not explicitly set forth. Yet it was. It was explicitly set forth in the same document, the same type of document, which was later amended, or the same document which was amended at a later point. The issue that we're dealing with here is, what do you do with an amended plan? How is that construed? And that specific issue is only addressed in the group insurance contract, and both plans have identical provisions referring you back to the group insurance contract for anything, for the underlying remaining provisions regarding governing the relationship. So I don't see a ñ In short, there's no conflict between the plan and the summary plan ñ I mean, between the contract and the summary plan description. Right. Exactly. And there can't be, because even if we say that the 1995 summary plan description totally supplants and replaces the 1990 version, the 1995 one specifically refers back to the group insurance contract, which in and of itself says we only ñ we apply amendments only where there's not been a claim already made. Just out of curiosity, is there anything in this record that indicates why it was amended? No, not that I'm aware of, nor do I have any personal knowledge. Okay. I don't know. Thank you. Is there some other questions? No. Thank you for the question. Thank you. Thank you very much. Mr. Lipton, very briefly. Yeah, I don't see a need to beat a dead horse. I understand the points the courts have made. I do think there's a conflict between the summary plan description, even though it references the other document and the other documents. This isn't even a question of a conflict. This is a question where we're saying that the whole summary plan description, not just part of it, doesn't apply to this gentleman, the plaintiff, because of another document. I think that's the most of a conflict you can ever have between the two. Thank you very much. Thank you very much. The case just argued is submitted for decision. We have the next case, which is Johnson v. Gorin. Thank you.
judges: Schroeder, Dw Nelson, Rymer